JOURNAL ENTRY AND OPINION
{¶ 1} Defendant, Joseph Andrews, appeals his sentence for aggravated burglary with a three-year firearm specification, aggravated robbery with a firearm specification, and having a weapon under disability. After refusing a plea offer, defendant and his co-defendant initially went to trial before a jury on a twelve-count indictment. While the state was still presenting its evidence, however, the two defendants changed their minds and accepted a plea bargain. Defendant was sentenced to eight years on the aggravated burglary count, with the mandatory three-year prison term for the firearm specification; eight years on the aggravated robbery count, to be served concurrently with the eight-year sentence in count one, and one year on having a weapon while under disability count, to be served concurrently with the eight years on the other two counts. His total sentence, therefore, is eleven years.
 {¶ 2} Defendant asserts two assignments of error, the first of which states:
The trial court failed to make the findings required to ensure that appellant's sentence is consistent with sentences imposed for similar offenses committed by similar offenders. OHio Rev. Code § 2929.11(B).
[Italics in original.]
 {¶ 3} Defendant points out that his co-defendant, who pleaded guilty to the same crimes, received a sentence totaling six years while defendant received a sentence totaling eleven years. He claims, therefore, that the court failed to be consistent in sentencing offenders for similar offenses.
 {¶ 4} Pursuant to R.C. 2953.08, a reviewing court may not disturb a felony sentence unless it finds by clear and convincing evidence that the sentence is contrary to law or is not supported by the record. State v.Coleman, Cuyahoga App. No. 82394, 2004-Ohio-234, at ¶ 15.
 {¶ 5} The sentencing statutes were written with certain objectives or goals in mind, as outlined in R.C. 2929.11. As we recognized, "trial courts are given broad but guarded discretion in applying these objectives to their respective evaluations of individual conduct at sentencing." State v. Georgakopoulos, Cuyahoga App. No. 81934, 2003-Ohio-4341, at ¶ 28, citing State v. Beasley, Cuyahoga App. No. 82884, 2004-Ohio-988 at ¶ 21.
 {¶ 6} Consistency is one of the goals of the sentencing statute. As R.C. 2929.11 states:
A court that sentences an offender for a felony shall be guided by the overriding purposes of felony sentencing. The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender. To achieve those purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both.
A sentence imposed for a felony shall be reasonably calculated to achieve the two overriding purposes of felony sentencing set forth in division (A) of this section, commensurate with and not demeaning to the seriousness of the offender's conduct and its impact upon the victim, and consistent with sentences imposed for similar crimes committed by similar offenders.
 {¶ 7} R.C. 2929.11(B). To achieve the goal of consistency, it is not necessary that a specific crime always receive the exact same sentence. Consistency is a general goal of the statute; it is not a precise method of measurement. As this court has previously explained:
 {¶ 8} Nothing in the statute, however, explicitly imposes upon the court the burden of demonstrating this consistency. Rather, this section appears to be a general introduction establishing the "overriding purpose" of the new sentencing rules. It is through the specific statutes that follow that the goal of consistency is to be achieved.
 {¶ 9} State v. Sample, Cuyahoga App. No. 81357, 2003-Ohio-2756, at ¶ 23. This court has further noted that: "There is no grid under Ohio law under which identical sentences must be imposed for various classifications of offenders. Instead, Ohio law offers a range of sentences so that divergent factors may be considered." State v. Turner,
Cuyahoga App. No. 81449, 2003-Ohio-4933, at ¶ 39.
 {¶ 10} The First Appellate District held that "[a]lthough we acknowledge the statutory mandate for consistency in sentencing, consistency does not require that identical sentences be imposed for co-defendants." State v. Rowland (May 11, 2001), Hamilton App. No. C-000592, 2001 Ohio App. LEXIS 2088 at *8. The court may consider other factors in its decision.
 {¶ 11} In Rowland, the Court found that it was not error to impose a longer sentence on a co-defendant convicted of the same crimes when the trial court had, in support of the mandated criteria, provided specific reasons for imposing different sentences on co-defendants. In the case at bar, the court found that defendant was very likely to reoffend, and then provided reasons for this finding when it imposed its sentence. The court noted that defendant had been paroled from prison just a few months when he became involved in the crime which is the subject of the case at bar.
 {¶ 12} Additionally, the court noted:
I have had the opportunity to look over a lot of appellate opinions that have been coming out of the sentences, and as bad as your record is, there are a few people who are much more likely to commit future crimes than you are. But I think you're a danger to the community, quite frankly. Until you get a lot older, I don't have any doubt that you are a danger to the community until you're well in your thirties. Hopefully you will be like most people and grow out of it at some point. And I have some hope that you will do that to the capacity that you're a human being. I think you have the capacity at some point in your life to decide that you've got to abide by the law.
Tr. at 874.
 {¶ 13} Defendant himself referenced his juvenile record at the sentencing hearing. He noted that it started when he was thirteen-years-old when he was caught in a stolen car. He also referenced a drug abuse charge and "a lot of assaults," all of which occurred while he was in custody in the Detention Home. Tr. at 863-864. Defendant also mentioned his conviction for corruption of a minor. Defendant himself demonstrated for the court that he had a long and serious criminal history.
 {¶ 14} We note that defendant's criminal record begins with receiving stolen property, is quickly followed by conspiracy to attempt complicity with a receiving stolen property count, and is followed six months later with a theft offense. A little over a year later, defendant had three separate assault convictions, which completed his juvenile record. As an adult, he was convicted of complicity to corrupt a minor with 31 counts, compelling prostitution, again 31 counts, and endangering children (31 counts), and two counts of extortion. He also was convicted for trafficking in drugs. Shortly after he completed his sentence for the adult crimes, he committed the crimes which are the subject of the case at bar.
 {¶ 15} Defendant's co-defendant, on the other hand, had a minimal criminal record and no prison record. At the co-defendant's sentencing hearing, the court explicitly provided its reasons for giving the co-defendant a lesser sentence. First, the court compared the co-defendant's situation with a similar case he had heard several years earlier. Then the court compared the codefendant's situation to defendant's:
Mr. Andrews, who was on parole at the time of this offense, got 11 years and I think I am satisfied that Mr. Andrews was the organizer of this whole thing. So I think that Mr. Dameron [the co-defendant] should get a lesser sentence.
I guess three things distinguish him from Mr. Andrews. One is he's never been to the penitentiary before. Second of all, he was not on post-release control or parole at the time this offense was committed, which Andrews was. * * * I'm satisfied [co-defendant] wasn't the person who set this up, and he had cooperated with the police.
 {¶ 16} * * *
 {¶ 17} I think, frankly, without [co-defendant's] cooperation, at least, I would have come to the conclusion that I couldn't give him the minimum sentence, but I am going to take his cooperation into account.
 {¶ 18} Tr. of co-defendant Caesar Dameron's sentencing hearing at 37-38.
 {¶ 19} The trial court's analysis shows that it carefully considered the co-defendant's sentence in comparison to defendant's. The court articulated its reasons for imposing a lesser sentence on the co-defendant. Because the court believed that defendant was the organizer of the crime, because defendant was on parole at the time he committed the crime, and because defendant had already served a prison term, the sentence the court imposed on him does not violate the sentencing statute.
 {¶ 20} The trial court did not err when it imposed its sentence on defendant. Accordingly, this assignment of error is overruled.
 {¶ 21} For his second assignment of error, defendant states:
 {¶ 22} Appellant was denied his constitutional rights to due process of law and effective assistance of counsel by; [sic] (i) his counsel's failure to provide the trial court with appropriate information to assist the trial court in complying with Ohio Rev. Code § 2929.11(B) and (II) his counsel's failure to present mitigating circumstances at the time of appellant's sentencing. sixth and fourteenth amendments to theconstitution of the united states; article I, Section 10, of theconstitution of the State of Ohio. [Italics in original.]
 {¶ 23} Defendant argues that he received a longer sentence than he would have if his counsel had effectively represented him.
 {¶ 24} For a reviewing court to find ineffective assistance of counsel, it must find, first, that counsel's representation fell below the accepted standard, and, second, that but for that deficiency, the outcome would have been different.
 {¶ 25} In order to demonstrate ineffective counsel, defendant must show not only that his counsel's representation fell below the standard of that of competent attorneys, but also that, but for that substandard representation, the outcome of his trial would have been different.Strickland v. Washington (1984), 466 U.S. 668; State v. Bradley (1989),42 Ohio St.3d 136. In State v. Norman, 2002-Ohio-6043, this court, quoting Strickland, said:
"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. Cf. Engle v. Isaac (1982), 456 U.S. 107, 133, 134,71 L.Ed.2d 783, 102 S.Ct. 1558. * * * Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." 466 U.S. at 689. See, also, State v. Frazier (1991),61 Ohio St.3d 247, 253, 574 N.E.2d 83.
Norman at ¶ 50.
 {¶ 26} Defendant first claims that his trial counsel failed to argue for any particular sentence on his behalf and failed to "present any information that would assist the trial court in complying with R.C.2929.11(B)." Appellant's Brief at 14. However, defendant fails to provide us with any examples of information counsel should have provided to assist the court. He has failed to show, therefore, that his trial counsel could have produced any information which would have influenced the court to impose a lighter sentence. If defendant argues that his counsel was deficient for failing to present something to the court below, it behooves him to inform this court what exactly that omitted material is. Without that, we must assume that the court's sentence would not have been altered by anything his counsel could have presented.
 {¶ 27} Next, defendant argues that his counsel failed to present mitigating circumstances to the court at his sentencing hearing. This assertion is not accurate. At the beginning of the sentencing hearing, counsel alluded to difficulties defendant had experienced which had "a dramatic effect on him," his continuing cooperation with the investigation, the absence of physical harm to the victims, and defendant's actual crime being less than the crime allegedly originally planned.[1] Tr. at 862.
 {¶ 28} Defendant himself also provided the court with further mitigating details, including the fact that his mother had been in prison for seven years and he has not had the opportunity to even know his siblings.
 {¶ 29} The court listened to this mitigating information before it imposed its sentence. In its sentencing, however, it focused on defendant's likelihood to reoffend in light of the fact that he committed this crime while on parole for only a few months. Tr. at 87.
 {¶ 30} Defense counsel was not ineffective for failing to present mitigating factors at the sentencing hearing. Because those factors were thoroughly presented to the court by both defense counsel and defendant himself, defendant has not shown that his counsel was ineffective. Accordingly, this assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and George, J., Concur.
[1] A review of the co-defendant's sentencing transcript shows that defendant and co-defendant claim that they were approached by the victim-husband with a plot to stage a break-in to the home he shared with the victim-wife, murder the victim-wife, and steal some of their belongings to make the murder look like a simple burglary gone wrong. The trial judge indicated that he believed some variation of this version of the events was correct because defendant and co-defendant took the bus to the home to break in. They both claimed that the victim-husband told them where the garage door opener and the keys to the car were located in the house. They both stated that they planned to escape in the husband's car.