[Cite as *State v. Schaper*, 2019-Ohio-749.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

BUTLER COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NO. CA2018-02-035 |
| | : | O P I N I O N |
| - vs - | | 3/4/2019 |
| | : | |
| CATHERINE MARIE SCHAPER, | : | |
| Appellant. | : | |


CRIMINAL APPEAL FROM BUTLER COUNTY COURT OF COMMON PLEAS
Case No. CR2015-03-0495


Michael T. Gmoser, Butler County Prosecuting Attorney, Willa Concannon, Government Services Center, 315 High Street, 11th Floor, Hamilton, Ohio 45011, for appellee

Christopher P. Frederick, 300 High Street, Suite 550, Hamilton, Ohio 45011, for appellant


**S. POWELL, J.**

{¶ 1} Appellant, Catherine Marie Schaper, appeals from the decision of the Butler County Court of Common Pleas sentencing her to serve two concurrent six-year prison terms after she pled guilty to the sale of an unregistered security and fraudulent acts or practices in the sale of securities. For the reasons outlined below, we affirm the trial court's sentencing decision.

**Facts and Procedural History**

{¶ 2} On May 7, 2015, Schaper and two of her codefendants, William Troy West and North Shore Energy, LLC, pled guilty to a bill of information charging each with one count of the sale of an unregistered security and one count of fraudulent acts or practices in the sale of securities, both second-degree felonies. The charges stemmed from Schaper and West's involvement in the fraudulent sale of promissory notes issued by North Shore Energy to at least 18 investors who resided in Ohio, Indiana, and Kentucky. The promissory notes sold by Schaper and West were for the purpose of investing in oil and gas drilling operations in Texas. A third codefendant, Robert McManus, also pled guilty to his involvement in this fraudulent scheme to selling securities without a license and the sale of an unregistered security. The record indicates this fraudulent scheme netted Schaper, West, McManus, and North Shore Energy more than two million dollars.

**Codefendants' Sentencing Hearing**

{¶ 3} On June 5, 2017, West, McManus, and North Shore Energy appeared before the trial court for purposes of sentencing.[1] After considering the information presented at the sentencing hearing, as well as the presentence-investigative reports, letters submitted to the trial court, and victim-impact statements, the trial court imposed a $30,000 fine on North Shore Energy. The trial court then sentenced McManus to two concurrent five-year prison terms. The trial court reached this decision after finding McManus had failed to exercise due diligence and used his relationship with the 18 victims to facilitate his crimes.

{¶ 4} Next, as it relates to West, the trial court sentenced West to two concurrent six-year prison terms. The trial court's sentencing decision was based upon its finding West

_____

1. Schaper did not appear for sentencing with her three codefendants because she was receiving specialized cancer treatment in Texas.

had a "slightly increased level of culpability" as a result of his fraudulent conduct in failing to disclose certain information to the victims regarding North Shore Energy's ongoing litigation in Texas.[2]

**Schaper's Sentencing Hearing**

{¶ 5} On February 13, 2018, Schaper appeared before the trial court for purposes of sentencing. During this hearing, Schaper's brother, sister-in-law, and friend addressed the trial court noting Schaper's purported upstanding character and her resolve throughout the pendency of the case. One of the victims then addressed the trial court. In no uncertain terms, this victim noted her disdain for Schaper and for what Schaper had done to her financially. This victim also specifically rebuffed Schaper's claim that she was just an innocent bystander that was caught up in a "perfect storm."

{¶ 6} A second victim then addressed the trial court. This victim stated the following:

> Okay. My name is [G.G.] and I got involved in this through Bob McManus, a Mason brother of mine. All that being said is that as far as I'm concerned in this flim-flam deal, I feel like [Schaper] is the Ma Barker of the whole deal. She's the head of the snake. If the other two people wouldn't have been in trouble at all if she hadn't initiated this whole deal.
>
> During this time, I lost a quarter million dollars, which was my life's savings. At no time was I ever offered any restitution, not even an Arby's coupon. This money was going to be for my kids' college. They've worked two and three jobs a piece putting themselves through college. It's had a hardship on the problem. I've gotten divorced on it.
>
> At no time have I ever gotten any sympathy or anything. It's like, you know, it's just too bad. From what she was to the community down there, she helped destroy this community. And I ask since they signed a thing that they tried to work this magic, they signed that they were guilty, and I ask that she gets

---

2. This court affirmed West's conviction and sentence in *State v. West*, 12th Dist. Butler No. CA2017-07-091, 2018-Ohio-640. A more detailed recitation of the facts leading to the charges at issue, as well as the trial court's sentencing decision as it relates to West, McManus, and North Shore Energy can be found in that opinion.

the maximum penalty. That's what I ask.

{¶ 7} Several other victims also addressed the trial court detailing their own financial devastation as a result of the fraud perpetrated by Schaper, West, McManus, and North Shore Energy.

{¶ 8} Schaper then addressed the trial court in allocution. During allocution, Schaper claimed it was never her intent to harm any of the 18 victims, thereby indicating some remorse for her actions. Schaper nevertheless maintained her innocence by claiming the 18 victims' losses were not a result of any wrongdoing on her part. Schaper instead blamed the whole ordeal on the oil wells turning up dry.

{¶ 9} Schaper also noted her own financial ruin, her serious medical condition, and her father's failing health. Schaper further noted that she was then studying to receive a license to sell life insurance so that she could get back on her feet and engage in a profession that would allow her to make enough money to pay restitution to the victims. Money, according to Schaper, that simply "can't be made from prison sir. I can't do it from there."

{¶ 10} Turning then to its sentencing decision, the trial court referred to its notes regarding the sentences it had imposed for West, McManus, and North Shore Energy. The trial court then noted it had "sentenced West to six years, and McManus to five years. I don't see Schaper's role much different from West's. * * * I believe that Ms. Schaper's role is very similar to the role of Mr. West."

{¶ 11} Expanding on this finding, the trial court stated:

> In the sense of having multiple defendants, viewing them in their situations, viewing them together, viewing what roles they played in whatever the endeavor was, viewing their backgrounds, their criminal backgrounds, or lack of backgrounds, and all of that sort of thing. And when I look at Ms. Schaper and I compare her to Mr. West, I see very, very, very similar roles that were played, very similar backgrounds,

very little reason to give a sentence different from what I gave to Mr. West.  That I think has to be the prevailing driving force in me in coming up with the appropriate sentence.

{¶ 12} Continuing, after specifically stating that it had considered the record, the overall felony sentencing structure as set forth by R.C. 2929.11 and 2929.12, the presentence-investigative report, as well as "any and every victim impact statement," and the statements made at the sentencing hearing, the trial court issued its sentencing decision and sentenced Schaper to two concurrent six-year prison terms.  The trial court based its decision, at least in part, on its prior sentencing decisions regarding West and McManus. Specifically, as the trial court stated:

In light of these considerations, and especially in light of that duty that I have to be proportional in my sentencing in thinking about Mr. West especially, and Mr. McManus especially, with the need to do that, the sentence is six years in prison.

**Appeal**

{¶ 13} Schaper now appeals from the trial court's decision sentencing her to serve two concurrent six-year prison terms.  After a thorough review of the record, we affirm the trial court's sentencing decision.

**Standard of Review**

{¶ 14} As with all felony sentences, we review the trial court's sentencing decision under the standard of review set forth in R.C. 2953.08(G)(2).  *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, ¶ 1.  Pursuant to that statute, this court may modify or vacate a sentence only if, by clear and convincing evidence, "the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law." *State v. Harp*, 12th Dist. Clermont No. CA2015-12-096, 2016-Ohio-4921, ¶ 7.  A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly

imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers*, 12th Dist. Butler No. CA2015-06-100, 2016-Ohio-2890, ¶ 8. This court may therefore "increase, reduce, or otherwise modify a sentence only when it clearly and convincingly finds that the sentence is (1) contrary to law or (2) unsupported by the record." *State v. Brandenburg*, 146 Ohio St.3d 221, 2016-Ohio-2970, ¶ 1, citing *Marcum* at ¶ 7.

**Analysis**

{¶ 15} Schaper initially argues the trial court's decision sentencing her to serve two concurrent six-year prison terms was improper because the sentence goes against the purposes and principles of felony sentencing as set forth by R.C. 2929.11 and 2929.12. Schaper also argues the trial court's sentencing decision goes beyond the overriding purpose of sentencing by exceeding the minimum sanctions needed to effectuate a proper punishment. In support, Schaper notes her age, her lack of any "similar fraudulent or criminal offenses," and her recent cancer diagnosis. Therefore, according to Schaper, when taking these factors into consideration, the trial court should have instead sentenced her to community control so that she could continue receiving the specialized treatment for her cancer and "to repay the investors." We find no merit to Schaper's claim.

{¶ 16} As noted above, after considering the record, the overall felony sentencing structure as set forth by R.C. 2929.11 and 2929.12, the presentence-investigative report, as well as "any and every victim impact statement," and the statements made at the sentencing hearing, the trial court found that sentencing Schaper to community control was not appropriate. This is because, as the trial court stated, Schaper and West had "very, very, very similar roles that were played, very similar backgrounds," thereby providing "very little reason to give [Schaper] a sentence different from what I gave to Mr. West."

{¶ 17} When considering R.C. 2929.11(B) requires the trial court to sentence a

felony offender "consistent with sentences imposed for similar crimes committed by similar offenders," such as Schaper and West here, we find no error in the trial court's decision to sentence Schaper with the exact same sentence it had previously imposed on West. This is true despite the fact that "each defendant is different and nothing prohibits a trial court from imposing two different sentences upon individuals convicted of similar crimes." *State v. Tewolde*, 10th Dist. Franklin No. 06AP-764, 2007-Ohio-2218, ¶ 13; *State v. Andrews*, 8th Dist. Cuyahoga No. 84137, 2005-Ohio-1161 (trial court is not required to impose the same sentence on codefendants for the same offenses).

{¶ 18} Schaper next argues the trial court's decision sentencing her to serve two concurrent six-year prison terms was improper because the sentence was not commensurate to the seriousness of her conduct. However, although the record indicates Schaper took responsibility for her actions by pleading guilty to the bill of information and appeared somewhat remorseful for her conduct, that does not negate the fact that she was an integral part in the fraudulent scheme that ultimately resulted in her and her three codefendants netting more than two million dollars .

{¶ 19} The statements elicited at the sentencing hearing indicate the fraudulent scheme she, West, McManus, and North Shore Energy orchestrated caused significant, devastating, and long-lasting financial and emotional hardship to the 18 victims. This includes, as G.G. stated, depletion of his children's college funds and his divorce. The trial court's sentencing decision is therefore certainly commensurate, if not somewhat lenient, given the seriousness of her conduct in creating financial and emotional ruin to the victims' lives.

## Conclusion

{¶ 20} After a full and thorough review of the record, we find no error in the trial court's decision sentencing Schaper to serve two concurrent six-year prison terms. In so

holding, we note that due to Schaper's guilty plea to two second-degree felonies, the trial court had the option of sentencing Schaper to a total maximum term of 16 years in prison. *See* R.C. 2929.14(A)(2) ("[f]or a felony of the second degree, the prison term shall be two, three, four, five, six, seven, or eight years").  The trial court instead exercised its discretion and chose to sentence Schaper to just six years in prison on each count running concurrent to one another.  The trial court did not err in reaching this decision.  Therefore, finding no merit to any of the arguments raised herein, Schaper's single assignment of error is overruled.

{¶ 21} Judgment affirmed.

HENDRICKSON, P.J., and M. POWELL, J., concur.